**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Estate of Cook v. Montville Twp.***, Slip Opinion No. 2024-Ohio-5690.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-5690

ESTATE OF COOK, APPELLEE, *v.* MONTVILLE TOWNSHIP ET AL., APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Estate of Cook v. Montville Twp.*, Slip Opinion No. 2024-Ohio-5690.]**

*Appeal dismissed as having been improvidently accepted.*

(No. 2023-1285—Submitted July 24, 2024—Decided December 6, 2024.)

APPEAL from the Court of Appeals for Medina County,

No. 22CA0046-M, 2023-Ohio-3002.

_____

The below judgment entry of the court was joined by FISCHER, DONNELLY, STEWART, and BRUNNER, JJ. KENNEDY, C.J., dissented. DEWINE, J., dissented, with an opinion joined by DETERS, J.

{¶ 1} This cause is dismissed as having been improvidently accepted.

_____

**DEWINE, J., joined by DETERS, J., dissenting.**

{¶ 2} We were asked to review a trial court's denial of a township's motion for summary judgment in a case involving a statutory exception to governmental immunity. Four justices voted to accept the case on the basis that it presented an issue of public or great general interest. 2024-Ohio-163; *see* S.Ct.Prac.R. 5.02(A)(3). Yet rather than decide the issue that we accepted, the majority chooses to punt and dismiss this case as improvidently allowed.

{¶ 3} We first accepted this case on January 12, 2024, and we held oral argument on July 24, 2024. It is true that the record and the briefing below presented some complicated issues. But despite its complexities, this is not a case where any of our traditional reasons for dismissing a case as improvidently allowed apply. It is not a case where what has been "presented on the merits is not the same case as presented" in the memorandum in support of jurisdiction, *Williamson v. Rubich*, 171 Ohio St. 253, 259 (1960), or one in which a deeper review has revealed that the issue presented in the proposition of law has been waived, *see State v. Mayfield*, 2004-Ohio-3440, ¶ 5 (Lundberg Stratton, J., concurring). Nor is it a case where a review of the record reveals other grounds for the decision below not encompassed in the proposition of law we accepted, *see State v. Harrison*, 2021-Ohio-4465, ¶ 56-63 (DeWine, J., dissenting), or one in which the facts prevent this court from reaching the issue, *see Ahmad v. AK Steel Corp.*, 2008-Ohio-4082, ¶ 2-9 (O'Connor, J., concurring). And resolving the proposition of law we accepted would not require us to write an advisory opinion. *See In re N.M.P.*, 2020-Ohio-1458, ¶ 30-35 (DeWine, J., dissenting).

{¶ 4} A late recognition that a case is complicated isn't a good reason to dismiss it—particularly after we put the litigants through the trouble of briefing and oral argument. *See State v. Hurt*, 2023-Ohio-3013, ¶ 2 (DeWine, J., concurring in part and dissenting in part) ("in accepting a case, we have put the parties to the time and expense of briefing and oral argument"). Here, the complexities were evident

when the case was argued. It would have been a disservice to the litigants to dismiss the case after oral argument, but it is an even greater disservice to dismiss the case now after having put the matter on hold for several months since argument.

{¶ 5} In addition to having added unnecessary delay and having wasted the litigants' time and money, the majority's decision to dismiss the case at this late juncture leaves in effect a lower-court decision that is demonstrably wrong. Let me explain why.

### *Background*

{¶ 6} Devon Cook was driving down a county road during a thunderstorm when the trunk of a tree fell on top of her car. After being struck, her car veered off the road and came to rest in a wooded area in Austin Badger Park, a park owned by Montville Township. She died there.

{¶ 7} The circumstances of this case are indeed tragic, but the case presents, at base, an issue of statutory interpretation. Cook's estate sought recovery by filing a complaint claiming negligence and wrongful death against Montville. Montville filed a motion for summary judgment arguing that it was entitled to immunity as a political subdivision of the State. The estate countered that an exception to immunity applied. The trial court denied the motion, finding that there were issues of material fact regarding the elements of the exception to immunity. The Ninth District Court of Appeals affirmed the trial court's denial of summary judgment. 2023-Ohio-3002 (9th Dist.).

{¶ 8} We accepted Montville's appeal on three propositions of law related to political-subdivision immunity. *See* 2024-Ohio-163. We are asked, plainly, whether an alleged exception to immunity creates the potential for liability here. A de novo review of the record leads to a clear conclusion: Montville's motion for summary judgment should have been granted because the exception does not apply to the facts in this case.

### *The elements of the statutory exception are clear*

{¶ 9} As a political subdivision, Montville would ordinarily be immune from liability in tort cases. R.C. 2744.02. But certain statutory exceptions can dissolve this immunity. *Id.* After a political subdivision claims immunity, the plaintiff carries the burden to prove that one of the exceptions applies. *See Mullins v. Liberty Twp.*, 2022-Ohio-4350, ¶ 45. ("The burden of proof is initially on the political subdivision to establish general immunity, and when established, the burden then shifts to the plaintiff to demonstrate that one of the exceptions to immunity applies."). To survive Montville's summary-judgment motion then, Cook's estate was required to set out specific facts demonstrating a genuine issue of material fact pertaining to one of the exceptions to immunity. *See* Civ.R. 56(E). The exception alleged here reads:

> [P]olitical subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.

R.C. 2744.02(B)(4).

{¶ 10} When even one element of the exception is not satisfied, the default position of immunity is reestablished. *See, e.g.*, *Pelletier v. Campbell*, 2018-Ohio-2121 (the trial court erred by denying Campbell's motion for summary judgment because an exception pertaining to the maintenance of a stop sign clearly did not create an obligation to remove foliage located 34 feet away from the stop sign).

4

***The tree was not on the grounds of a building***

{¶ 11} A review of the record reveals several possible legal and factual disputes. But our attention is best focused on the one element of the statutory exception that is clearly not satisfied: the tree that fell on Cook's car was not "within or on the grounds of" *any* building.

{¶ 12} The trunks of the tree in question were partially located in both Medina County and in Austin Badger Park, a park owned by Montville Township. The R.C. 2744.02 exception requires the trunk to be "within or on the grounds of" a building Montville used "in connection with the performance of a governmental function." R.C. 2744.02(B)(4). There are four potential structures from which to begin our analysis: a set of covered shelters, a pole barn, a "halfway house," and a maintenance building. The latter two are located in the Aaron Smith Nature Preserve, a green space that is separated from Austin Badger Park by Interstate 71. The covered shelters and the pole barn were the only structures in Austin Badger Park. There are questions about whether the covered shelters constituted "buildings" and about whether a few of the structures were used "in connection with the performance of a governmental function" at the time of Cook's death. We do not need to resolve these questions, however, because the tree was not on the grounds of any of the structures.

{¶ 13} It is true that we have not defined "the grounds of a building" in a way that easily disposes of this case. But we need only consult the plain meaning of "the grounds of" to reach a legal conclusion here. Aside from an intuitive sense of what "the grounds" of a building might constitute, a number of dictionaries provide guidance.

{¶ 14} Webster defines "grounds" (plural) as the "gardens, lawn, and planted areas immediately *surrounding* and *belonging to* a house or other building." (Emphasis added.) *Webster's Third New International Dictionary* (2002). *The New Lexicon Webster's Dictionary of the English Language* (Encyclopedic Ed.

1987) defines it as "land, often with lawns, flower gardens, etc., *attached to* a house for ornament and recreation" or as "an area of land *devoted to and equipped for* some special purpose, [e.g.,] camping ground." (Emphasis added.) In *Webster's New International Dictionary* (2d Ed. 1953), grounds are defined as "[t]he gardens, lawns, fields, etc., *belonging to a homestead*; as, [e.g.,] well-kept grounds." (Emphasis added.) *Oxford English Dictionary* (1933) defines it as "[a]n enclosed portion of land of considerable extent *surrounding or attached to* a dwelling-house or other building, serving chiefly for ornament or recreation" and "[f]ormerly in more general sense=lands, fields." (Emphasis added.)

{¶ 15} As defined, "grounds" do not exist without some anticipatory connection to another entity. And the statute provides such a connection: the "grounds of . . . buildings." R.C. 2744.02(B)(4). In other words, the statute requires this tree to have existed within or on an area surrounding, attached to, or belonging to a building used in connection with the performance of a governmental function.

{¶ 16} Cook's estate points to several statutory provisions that also employ the phrase "on the grounds of." In each of the statutes provided, "on the grounds" was limited by a connection to a kind of building (a state correctional institution, in R.C. 2903.13(C)(3); a veterans' home, in R.C. 5907.02; a residence, in R.C. 3780.29(A)(1)(b); an office building, in R.C. 2921.36). This only bolsters the point. While it is true that the legislature has not defined what constitutes the "grounds of" a building, it doesn't need to. All we need to know here is that grounds are limited by their connection to a building.

{¶ 17} After consulting dictionaries, we can easily deploy our common sense to resolve this case by finding that the tree was not on the grounds of any building. Importantly, the legislature did not provide that the defect must be "within or on the grounds of a park so long as a building is in the park." So it can't be the case, as is seemingly offered by Cook's estate, that as long as a political subdivision's building exists in a park that it owns, any tree in said park is "on the

grounds of" that building. Rather, it must be clear that the tree belongs to it or is in an area surrounding it in some obvious, intentional way.

{¶ 18} The analysis of what constitutes the grounds of a building in this exception should be grounded in a consideration of the actual proximity of the land to a building and the connection that land has to the building in terms of a clear governmental purpose or open accessibility to the public. Just as no one would suggest that every tree in Yellowstone National Park is on the grounds of a cabin located with the park, no reasonable speaker of the English language would describe the tree at issue as "on the grounds of" any of the buildings in question.

### *Conclusion*

{¶ 19} There is no valid reason to dismiss this case as improvidently allowed. Cook's estate has failed to come forth with any evidence establishing a genuine issue of material fact as to whether the tree was on the grounds of any building. We should reverse the judgment of the Ninth District Court of Appeals and remand the matter to the trial court to enter summary judgment in favor of Montville Township.

_____

Baker Dublikar, Gregory A. Beck, James F. Mathews, Tonya J. Rogers, and Brittany A. Bowland, for appellants, Montville Township, Montville Service Department, and Montville Township Board of Trustees.

Zagrans Law Firm, L.L.C., and Eric H. Zagrans; and Goldberg Legal Co., L.P.A., and Steven M. Goldberg, for appellee, Estate of Devon Cook.

Isaac Wiles & Burkholder, L.L.C., Mark Landes, Brian M. Zets, and Dale D. Cook, in support of appellants for amici curiae, Ohio Township Association, County Commissioners Association of Ohio, Ohio Parks and Recreation Association, and Ohio Municipal League.

_____